162 So.2d 657 (1964)
NORTHEAST POLK COUNTY HOSPITAL DISTRICT et al., Appellants and Cross-Appellees,
v.
H.B. SNIVELY et al., Appellees and Cross-Appellants.
No. 32543.
Supreme Court of Florida.
April 1, 1964.
John H. Dewell, Haines City, and J. Hardin Peterson, Sr., Lakeland, for appellants and cross-appellees.
Gordon Petteway, Lakeland, and Paul Ritter, Winter Haven, for H.B. Snively.
Hull, Landis, Graham & French, DeLand and Edgar H. Dunn, Jr., St. Petersburg, Gen. Counsel, for Florida Power Corp.
Straughn, Sharit & Kalogridis, Winter Haven, for General Telephone Co. of Florida.
THOMAS, Acting Chief Justice.
This case as originally presented to us seems now to have undergone a vital change. Its complexion differs sharply by reason of the passage of certain legislation, soon to be digested, while the controversy pended in this court.
Initially we were asked to review by direct appeal under Sec. 4, Art. V of the Constitution, F.S.A., a decree of the chancery court in which it was held that Chapter 61-2701, Laws of Florida, Acts of 1961, was unconstitutional. The decision was reached by declaring first that Secs. 6, 10 and 11, and apparently part of Sec. 12 of the Act were invalid and that although Sec. 13, under attack too, did not offend the Constitution, the Act would be inoperative without the sections and part section stricken, so the whole Act was held unconstitutional.
As we undertook to come to a decision of the correctness of the chancellor's ruling and began to treat of the sections in numerical order, we noted in the last brief filed references to legislation affecting the law and became aware of the possibility that any labor on the case would be lost until *658 we were fully informed of what had occurred in the legislature so we requested new briefs dealing with the problem and they were furnished by counsel for all parties.
Now it seems that our apprehension was well founded for during the legislative session of 1963 two Acts were passed affecting drastically the subject of the litigation, namely, the creation and operation of Northeast Polk County Hospital District.
The Acts were eventually numbered 63-1815 and 63-1817; both became law without the Governor's approval 10 July 1963. This occurred after all briefs in the present case were filed except the reply brief of the appellants-cross appellees. The first of these laws is comprehensive and in many respects a reenactment of Chapter 61-2701 creating the hospital district and containing many provisions for operating and financing the District. It tracks closely the original Act even to the extent of providing for a "referendum election" which under the later Act, Chapter 63-1815, was required to be held prior to 1 October 1963. But it also makes material changes in the very sections, the validity of which in the appeal, we were asked to determine.
Sec. 6 had been assailed because it only provided for inspection of the books of the District by taxpayers living in the District while non-residents who bore their share of the burden were not so privileged which the chancellor decided amounted to depriving the latter of equal protection of the law. This flaw was attempted to be cured by Sec. 6 of Chapter 63-1815 in which it is provided that records of the District shall at all reasonable times be open to inspection "by anyone".
The chancellor had decided that Sec. 10 of the law was invalid for failure definitely to fix the limitation of indebtedness. The content of this section was not changed by the later Acts so far as limitation on the amount of indebtedness and the maturity of notes to evidence it were concerned but a material change in that part of the law was effected when this language was added: "said note or notes herein authorized shall be payable out of funds other than tax funds." Thus was taken from the shoulders of taxpayers the burden of meeting the debts from time to time incurred, and the task would then be shifted to those from whom other revenue would be exacted. It is significant that this change by amendment provoked from the taxpayer-appellees the representation that they were no longer "concerned with how much indebtedness the district [could] incur if [their] property [could not] be taxed to pay such indebtedness."
Section 11 was the next to fall by the circuit judge's decree. It was provided there that every person or corporation furnishing electricity, telephone service and natural or manufactured gas to users within the district was declared to be exercising a privilege upon which the commissioners were authorized to levy a tax at a fixed monthly rate per user with variations, however, according to residential, commercial and industrial uses.
The circuit judge condemned this section for the reason that it did not definitely limit the amount of the utility tax that could be imposed. The provision was only that a tax, for the privilege of furnishing the service or utility should be "computed at a flat monthly rate." There was no limitation whatever of the "flat" sum that could be levied or guide by which it could be fixed.
The alteration of Sec. 11 was of most severe character. The objection in the suit that there was no limitation on the amount of tax to be charged for utilities was met by adding the following:
"The amount of tax to the user for each type of utility (gas, electric or telephone) shall not exceed one dollar ($1.00) per month per user on each type of utility on commercial-industrial and the rate of tax to users for residences or other use shall not exceed fifty per *659 cent (50%) of the rate charged on commercial-industrial users. The total to be raised shall not exceed the maximum as hereinafter set forth in this act."
The chancellor had held Sec. 12 of the original law, Chapter 61-2701, unconstitutional because of the absence of limitation of the amount of the ad valorem taxes that the District was empowered to levy. Under the law the "Board of Commissioners of the District [was] authorized and empowered to levy and collect annually an ad valorem tax upon all tangible property, real or personal, or both, in said District for the purpose of providing a sinking fund for the payment of interest and principal of the bonds authorized by this Act and to provide revenue for the operation of the District." (Italics supplied.) Inasmuch as the remaining pertinent portion of this section is not very clear, we quote it:
"The ad valorem tax so levied shall be at a rate annually which it is anticipated will produce revenue in an amount not in excess of the amount anticipated to be received from all other taxes levied for the year; provided, however, that if the utility taxes provided by this Act should be determined by a Court of competent jurisdiction to be violative of the Constitution of the State of Florida or of the United States, or should by such Court be found invalid and unenforceable, then, the said limit upon the amount of ad valorem taxes to be levied shall be of no force or effect; * * *."
Upshot of the chancellor's reasoning with regard to Sec. 12 was that since he was holding the utility tax invalid, as we have seen, limitation on the ad valorem tax vanished. When Sec. 12 was incorporated in Chapter 63-1815 at least one crucial revision was made. The language we have italicized, relating to application of ad valorem taxes to the expense of operating the District, was eliminated.
In Chapter 63-1815 there were added to original Sec. 13 provisions with reference to limitation of taxes levied under Secs. 11 and 12 and especially the limitation upon ad valorem taxes in the event the proposed utility taxes were held invalid.
This concludes our observations about the effect of Chapter 63-1815 upon Chapter 61-2701 and upon the issues brought to this court, and brings us to a consideration of Chapter 63-1817 which it will be recalled became a law the same day. Aside from the section declaring its effective date there is but one other.
It reads that "in view of the fact that litigation is now pending regarding the interpretation of certain portions of Chapter 61-2701," obviously a reference to this suit, it was "the legislative intent * * * not to cause the questions raised * * * to become moot * * *."
We pause to say that despite our inclination, if not obligation, to recognize and observe legislative intent we cannot agree that it may be enacted that matters are not `moot' when by enactment on the same day those very matters have been so transformed that a discussion of the points first presented would have no practical significance and would be purely academic.
This Act has two other features that should be mentioned. One is the provision that all powers of the District commissioners that survive the attack on the Act should endure "without the necessity of holding an additional referendum"  this despite the provision for one in the companion Act , and that taxes specified in Secs. 11, 12 and 13 of Chapter 61-2701, supra, should be limited to providing for a sinking fund to pay bonds and interest on them and carrying the admonition that "no part of such taxes or tax funds [should] be used for operating expenses." Here, too, was the introduction of a material, substantial, amendment to the Act submitted here.
*660 Out of all the "confusion [of the first situation] worse confounded" by the legislation which meanwhile took place, emerges a clear thought, or two.
Discussion of the points initially presented to us would be nothing more than mere brutum fulmen. The case in its present stage is not the one studied, discussed and decided by the chancellor and certainly we should be required to review only what he had the opportunity to consider. South Dade Farms, Inc. v. Peters, Fla., 107 So.2d 30.
We must decline to engage in a discussion of the case as it was, or now is, and it is our order that the cause be remanded to the chancery court for reconsideration and re-determination of issues that may be formulated in the light of the legislation of 1963.
ROBERTS, O'CONNELL, CALDWELL and HOBSON (Retired), JJ., and HEWITT, Circuit Judge, concur.