188 So.2d 300 (1966)
Sam SILVER, Appellant,
v.
STATE of Florida, Appellee.
No. 34313.
Supreme Court of Florida.
April 20, 1966.
Rehearing Denied June 28, 1966.
Julius F. Parker, Seymour H. Rowland, Jr., Parker, Foster & Madigan, Tallahassee, and Albert Datz, Jacksonville, for appellant.
Earl Faircloth, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
THOMAS, Justice.
Sam Silver, the appellant, and one Harold Hilsenrad, were charged with grand larceny in an information filed in the Criminal Court of Record of Duval County. The trial culminated in a verdict of guilty. Eventually an appeal to the District Court of Appeal, First District, 174 So.2d 91, was taken by Silver. What became of Hilsenrad we do not learn from the record so we are only concerned with the fortune of Silver.
*301 In the appellate court there was considered and decided the constitutionality of Section 811.021 which the appellant first challenged via a vague assignment of error in that court. It was held that the statute clearly defined as one of the forms of larceny the act of securing the signature of a person to a written instrument, the false making of which would be punishable as forgery, with intent to defraud the owner of his property or to appropriate the same to the use of the taker. The author of the opinion concluded, and his colleagues agreed, that the former crime of obtaining money under false pretenses had been absorbed in the offenses denounced by Section 811.021.
The manner in which the Constitutional question was presented was criticized by the District Court of Appeal when it was observed that the appellant had failed to identify the particular assignments of error with the respective points of law involved as required by Florida Appellate Rule 3.7(f) (4), 31 F.S.A. Nevertheless the court decided to be indulgent but warned that although no penalty would be imposed in this instance "this forbearance is not to be taken as precedent for future violations."
The procedure followed is even worse and will not be condoned by this court. There was no effort to present to the trial court an assault on the constitutionality of the section on which the information was grounded. In fact, the appellant states in his brief that he "did not specifically raise the constitutionality of the statute involved in the trial court," then adds "although his motion to quash information on the ground that the information did not state a crime would probably encompass a constitutional complaint." (Italics supplied.)
This circuitous method of bringing to the Supreme Court a constitutional inquiry cannot be approved. It is an attempt to circumvent the trial court despite the former rulings that an appellate court will disregard questions not presented to trial courts. Ross v. Florida Sun Life Insurance Co., Fla.App., 124 So.2d 892; Northeast Polk County Hospital District et al. v. Snively, Fla., 162 So.2d 657. In the opinion in Mariani v. Schleman, Fla., 94 So.2d 829, this court said that it was "a rule of long standing that on appeal this Court [would] confine itself to a review of those questions, and only those questions, which were before the trial court." Furthermore, the court said "Matters not presented to the trial court by the pleadings and evidence will not be considered by this court on appeal."
The quoted language seems extremely apposite to the case at bar. But before we pursue the matter we take a look at the constitutional provision with reference to appeals here from initial constitutional problems in the District Courts of Appeal and to the need for it. The provision as it appears in Section 4(2) of Article V of the Constitution, F.S.A., or so much of it as applies to the present problem, will bear quoting. "Appeals from district courts of appeal may be taken to the supreme court, as a matter of right, only from decisions initially passing upon the validity of a state statute * * *." The primary purpose of the provision arose from the provision of Section 5(3) of Article V vesting in District Courts of Appeal original jurisdiction in cases of mandamus, prohibition and quo warranto. So, it was imperative to provide for appeals in these instances of original jurisdiction else an aggrieved litigant would have no place to go. This is not to say that there may not be cases other than those of original jurisdiction where initial resolution of a constitutional attack might properly be first decided by a district court of appeal. But the immediate controversy is not one of them.
Sanction of the maneuver attempted in this cause could, and probably would, result in much mischief, for example, a defendant could plead not guilty to an information, offer no challenge of the statute forming a basis for the formal charge then *302 abide the verdict and adjudication hoping, no doubt, there would be a conclusion of not guilty. Then he could appeal and by assignment of error obscure any question of the validity of the act by assigning a general ground indistinctly relating to a ruling on a motion for a new trial which could "probably" embrace a challenge of constitutionality since it consisted of the charge that "the information did not state a crime * * *." Going a step farther, the hypothetical defendant in a nebulous fashion on which the District Court of Appeal animadverted finally could inject there for the first time the constitutional question. Meanwhile the trial court would have been left far behind with never a chance to pass upon the constitutional issue. So the hypothetical defendant after losing his case in the District Court of Appeal could knock at the door of the Supreme Court and represent that the constitutional question so belatedly and nebulously raised by him had been "initially" decided by the District Court of Appeal. Were he to succeed he would have had two appeals instead of the one to which we have said he was entitled, Lake v. Lake, 103 So.2d 639, Fla. 1958.
The attempt is, we apprehend, ingenious but it is not conducive to sound practice, and it is so lacking in merit that we reject it as a means of vesting jurisdiction in this court.
The appellant's right of appeal was vouchsafed to him by the same section of the Constitution. He had but to secure a ruling on the constitutional question in the trial court then, in event of an unfavorable ruling, appeal direct to this court. Not having followed a course that is clearly charted he is now hoist on his own petard.
We do not hesitate to say that from the contents of the brief which reveal to us the essence of appellant's unscrupulous conduct, we feel no qualms about deciding the case on what would appear to be a technicality.
John Henry Johnson, an aged unlettered Negro, was induced to sign a note and mortgage for $1795. with interest at the rate of 10% on the representation that it covered the cost of repairs on his home, whereas the repairs actually cost not exceeding $175. and at the time of the execution of the note and mortgage had not even been made. Silver, the appellant, was engaged in the business of improving homes and handling mortgages while one Hilsenrad, co-defendant, was his employee. This misdeed, established by proof to the satisfaction of the jury, was fraud and obtaining of property under false pretense of the rankest variety.
Upon mature consideration, and for the reasons given, jurisdiction is declined and the opinion of the District Court of Appeal, is, therefore, not disturbed.
THORNAL, C.J., and ROBERTS, O'CONNELL, ERVIN, HOBSON (Retired) and BARNS (Retired), JJ., concur.